# EXHIBIT 1

Hearing Date: 11/29/2021 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
Cook County, IL

* 5 0 0 9 5 6 7 1 *
FILED
7/29/2021 4:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03714

14242915

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |
| **Summons - Alias Summons** | | **(03/15/21) CCG 0001 A** |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Name all Parties

Jadwiga Nowak

Plaintiff(s)

v.

Caliber Home Loans, Inc. and Caneel Group, LLC

Defendant(s)

Case No. 2021CH03714

Caliber Home Loans, Inc. c/o C T Corporation System, Registered Agent, 208 S. LaSalle St., Ste. 814, Chicago, IL 60604

Address of Defendant(s)

Please serve as follows (check one): ○ Certified Mail ● Sheriff Service ○ Alias

**SUMMONS**

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**THERE IS A FEE TO FILE YOUR APPEARANCE.**

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**



FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**E-FILING**: E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER**: If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE**: Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE**: You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

◉ Atty. No.: 47671
○ Pro Se 99500

Name: Arthur C. Czaja
Atty. for (if applicable):
Plaintiff

Address: 7521 N. Milwaukee Ave.
City: Niles
State: IL Zip: 60714
Telephone: 847-647-2106
Primary Email: arthur@czajalawoffices.com

Witness date 7/29/2021 4:35 PM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

☐ Service by Certified Mail: ______

☐ Date of Service: ______
(To be inserted by officer on copy left with employer or other person)



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

Hearing Date: 11/29/2021 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
Cook County, IL

* 5 0 0 9 5 6 7 1 *

FILED
7/29/2021 4:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03714

14242915

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**2120 - Served** **2121 - Served** **2620 - Sec. of State**
**2220 - Not Served** **2221 - Not Served** **2621 - Alias Sec of State**
**2320 - Served By Mail** **2321 - Served By Mail**
**2420 - Served By Publication** **2421 - Served By Publication**
**Summons - Alias Summons** **(03/15/21) CCG 0001 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Name all Parties

Jadwiga Nowak

Plaintiff(s)

v.

Caliber Home Loans, Inc. and Caneel Group, LLC

Defendant(s)

Case No. 2021CH03714

Caliber Home Loans, Inc. c/o C T Corporation System, Registered Agent, 208 S. LaSalle St., Ste. 814, Chicago, IL 60604

Address of Defendant(s)

Please serve as follows (check one): ○ Certified Mail ● Sheriff Service ○ Alias

**SUMMONS**

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**THERE IS A FEE TO FILE YOUR APPEARANCE.**

**FILING AN APPEARANCE**: **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**E-FILING**: E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER**: If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE**: Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE**: You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

(•) Atty. No.: 47671
( ) Pro Se 99500

Name: Arthur C. Czaja
Atty. for (if applicable):
Plaintiff

Address: 7521 N. Milwaukee Ave.
City: Niles
State: IL Zip: 60714
Telephone: 847-647-2106
Primary Email: arthur@czajalawoffices.com

Witness date 7/29/2021 4:35 PM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

☐ Service by Certified Mail: ____________

☐ Date of Service: ____________
(To be inserted by officer on copy left with employer or other person)



* 5 0 0 9 5 6 7 1 *

# GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

## CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

## CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

## COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

## DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

## DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

## LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

## PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

## ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

Hearing Date: 11/29/2021 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
Cook County, IL

* 5 0 0 9 5 6 7 1 *

FILED
7/29/2021 4:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03714

14242915

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**Chancery Division Civil Cover Sheet**
**General Chancery Section**

**(12/01/20) CCCH 0623**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

Jadwiga Nowak
Plaintiff

v.

Caliber Home Loans, Inc. and Caneel Group, LLC
Defendant

Case No: 2021CH03714

**CHANCERY DIVISION CIVIL COVER SHEET**
**GENERAL CHANCERY SECTION**

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

- 0005 ☐ Administrative Review
- 0001 ☑ Class Action
- 0002 ☐ Declaratory Judgment
- 0004 ☐ Injunction
- 0007 ☐ General Chancery
- 0010 ☐ Accounting
- 0011 ☐ Arbitration
- 0012 ☐ Certiorari
- 0013 ☐ Dissolution of Corporation
- 0014 ☐ Dissolution of Partnership
- 0015 ☐ Equitable Lien
- 0016 ☐ Interpleader
- 0017 ☐ Mandamus
- 0018 ☐ Ne Exeat
- 0019 ☐ Partition
- 0020 ☐ Quiet Title
- 0021 ☐ Quo Warranto
- 0022 ☐ Redemption Rights
- 0023 ☐ Reformation of a Contract
- 0024 ☐ Rescission of a Contract
- 0025 ☐ Specific Performance
- 0026 ☐ Trust Construction
- 0050 ☐ Internet Take Down Action (Compromising Images)
- ☐ Other (specify) ______

(●) Atty. No.: 47671 ○ Pro Se 99500

Atty Name: Arthur C. Czaja

Atty. for: Plaintiff

Address: 7521 N. Milwaukee Ave.

City: Niles State: IL

Zip: 60714

Telephone: 847-647-2106

Primary Email: arthur@czajalawoffices.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: ______

Hearing Date: 11/29/2021 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
Cook County, IL

* 5 0 0 9 5 6 7 1 *

FILED
7/29/2021 4:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03714

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

| | | |
|---|---|---|
| **JADWIGA NOWAK,** | ) | Case No. 2021CH03714 14242915 |
| Plaintiff, | ) | |
| vs. | ) | |
| **CALIBER HOME LOANS, INC., and CANEEL GROUP, LLC,** | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Jadwiga Nowak ("Nowak"), individually, and on behalf of all persons similarly situated, by her attorneys, for her complaint against Caliber Home Loans, Inc. ("Caliber") and Caneel Group, LLC ("Caneel"), states:

**NATURE OF THE ACTION**

1. Caliber, a default mortgage servicer, violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), when it communicated information about debt to parties other than the consumer, the consumer's attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector in connection with the collection of a consumer debt allegedly owed by Nowak, and those identified in the putative classes described *infra*.

2. Caneel, a debt collector engaged by Caliber, violated the FDCPA when it communicated with Nowak and members of the putative class to collect a consumer debt and failed to provide notice as required by §1692g of the FDCPA.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

3. Caneel violated the FDCPA when it falsely represented to Nowak that it could act as attorney and negotiate on behalf of Nowak to clear liens or judgment on her Home in violation of 15 U.S.C. §1692e(3) and 15 U.S.C. §1692e(10).

4. Caneel violated the FDCPA when it failed to disclose that it was a debt collector in its communication with Nowak and otherwise failed to make proper disclosures to Nowak in its initial communication. 15 U.S.C. §1692e(11) and 15 U.S.C. §1692g.

**THE FDCPA**

5. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with attempts to collect a debt.

6. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

7. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

8. Among other things, the FDCPA prohibits debt collectors from disclosing consumer debt information to third parties without the consumer's consent. 15 U.S.C. § 1692c(b).

9. The FDCPA also mandates that consumers be given certain disclosures in communications sent by debt collectors. 15 U.S.C. § 1692g(a). The FDCPA prohibits debt



FILED DATE: 7/29/2021 4:35 PM 2021CH03714

collectors from falsely representing that they are attorneys and prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. §1692e(3) and 15 U.S.C. §1692e(10).

10. The FDCPA encourages consumers, through counsel, to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. TransUnion, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

11. Nowak seeks to enforce these policies and civil rights which are expressed through the FDCPA on behalf of herself and other consumers with similar claims.

**JURISDICTION**

12. Federal and state courts have concurrent jurisdiction of FDCPA actions. 15 U.S.C. § 1692k(d).

13. This Court has personal jurisdiction pursuant to 735 ILCS 5/2-209.

14. Venue is proper pursuant to 735 ILCS 5/2-101.

**THE PARTIES**

15. Nowak is a natural person, over 18-years-of-age, who at all times relevant resided in Cook County, Illinois.

16. Caliber is a Delaware corporation which maintains its principal place of business in Texas.

17. Caliber is a national mortgage servicer which regularly collects delinquent consumer mortgage debts from people in Illinois and throughout the nation.

18. Caliber uses postal mail, an instrumentality of interstate commerce, within Illinois and across state lines throughout the United States, for its business, the principal purpose of

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM   2021CH03714

which is the collection of debts, and/or each regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19.     The FDCPA does not just apply to third-party debt collection firms; the statute's broad definition of "debt collector" encompasses servicers of consumer and mortgage loans that do not acquire ownership of the underlying debt, but acquire servicing rights after the loan is in default. *See* 15 U.S.C. § 1692a(6)(F); *Johnson v. Carrington Mortgage Servs.*, 638 F. App'x 523, 524–25 (7th Cir. 2016) (stating that where a servicer begins servicing the mortgage loan after a default, it is a "debt collector" under the FDCPA and dismissing Nowak's FDCPA claim because servicer began servicing the loan while the mortgage loan was current); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536–37 (7th Cir. 2003) (holding that servicer was a "debt collector" where the debt was not actually in default, but the servicer acquired it as a debt in default and its collection activities were based on that understanding).

20.     Caliber is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

21.     Caneel is a Delaware limited liability company which maintains its principal place of business in New Jersey.

22.     Caneel works on behalf of default servicers and others to mitigate loss on non-performing consumer mortgage loans. Caneel communicates with consumers in Illinois and throughout the nation in attempting to collect debt for its default servicer clients.

23.     Caneel uses postal mail, an instrumentality of interstate commerce, within Illinois and across state lines throughout the United States, for its business, the principal purpose of which is the collection of debts, and/or each regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

24. Caneel is a collection agency licensed in Illinois by the Illinois Department of Financial and Professional Regulation.

25. Caneel is a debt collector within the meaning of 15 U.S.C. § 1692a(6) because it communicated with Nowak on behalf of Caliber to collect the Loan and by representing to Nowak that the Loan debt could be satisfied through loss mitigation alternatives to foreclosure. Caneel was engaged by Caliber to assist Caliber to collect the Loan through negotiation of loss mitigation options. Such activity is debt collection within the meaning of the FDCPA. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015) ("Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of 'debt collection' under the FDCPA, and it is even contemplated in various places in the statute." (citations omitted); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."); *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453 (6th Cir. 2013) ("[M]ortgage foreclosure is debt collection under the FDCPA."); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir.2006) ("[A]ctions surrounding the foreclosure proceeding were attempts to collect that debt."); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006)("[A] party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests."); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3d Cir.2005) ("[I]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA." (citation omitted) (internal quotation marks omitted)).

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

26. At all times, Caneel acted within the scope of its authority as the authorized agent for Caliber.

27. Nowak owns a home located at 2617 North Monitor Avenue, Chicago, Illinois (the "Home"), which she acquired to occupy as a personal residence.

28. In order to obtain money for personal, family and household purposes - the purchase of the Home - on February 7, 2003, Nowak borrowed money and executed a note in the amount of $130,000.00 payable to the America's Wholesale Lender (the "Note"). To secure payment of that Note, Nowak granted a contemporaneous mortgage lien on her Home (the "Mortgage"). The Note and Mortgage are collectively referred to herein as the "Loan." Copies of the Note and Mortgage are attached hereto as ***Exhibit 1***.

29. Caliber is the servicer for the Loan and acquired servicing after the Loan was alleged to be in default.

30. On January 15, 2016, Ditech Financial, LLC, filed a foreclosure action in the Circuit Court of Cook County, Illinois (Case No. 2016-CH-00572, the "Foreclosure Case"), to collect the Loan from Nowak. After this Foreclosure Case was filed, Caliber became the servicer of the Loan.

31. Nowak is a "consumer" as defined in 15 U.S.C. § 1692a(3) because she is a natural person from whom Caliber sought to collect a debt allegedly incurred for personal, family, or household purposes. Here, the debt is the Loan, and the purpose was to finance debt on the Home.

## ADDITIONAL FACTUAL ALLEGATIONS

32. Once it became the servicer of the Loan, Caliber engaged Caneel to assist it in collection of the Loan.



33. Details regarding the debt allegedly owed by Nowak, including her status as a debtor, the fact that Nowak allegedly owed and was delinquent in the payment of the Loan, were communicated and disclosed to Caneel by Caliber.

34. The information about the debt allegedly owed by Nowak that was communicated to others without authorization by Caliber to Caneel was non-public, highly personal and sensitive, and otherwise of a nature that Nowak or any person would find disclosure to others to be intrusive and highly embarrassing.

35. In a letter dated December 4, 2020, Caneel first communicated with Nowak on behalf of Caliber. A copy of this letter is attached as ***Exhibit 2***.

36. In the December 4 letter, Caneel communicated "options" for Nowak to keep her home, including loan modification, deed in lieu and cash for keys.

37. Caneel sought to negotiate loss mitigation options with Nowak directly and without the involvement of her attorney of record in the Foreclosure Case.

38. *Exhibit 2* is signed by Todd Geweke, Loss Mitigator.

39. In a letter dated February 10, 2021, Caneel again communicated with Nowak on behalf of Caliber. A copy of this letter is attached as ***Exhibit 3***.

40. In the February 10, 2021 letter, Caneel represented to Nowak that it could "assist ...with clearing any liens or judgments on your property."

41. *Exhibit 3* is signed by Tina Picucci, Loss Mitigator.

42. Caneel and its employees are not attorneys and are not authorized to practice law in Illinois.

43. Assisting a person to clear liens or judgment and negotiating the resolution of such claims on behalf of another constitutes the practice of law in Illinois.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM   2021CH03714

44.    Nowak did not consent to the disclosure of the information that Caliber communicated to Caneel to anyone by anyone.

45.    The FDCPA defines "communication" at 15 U.S.C. § 1692a(3) as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

46.    Caneel is not the consumer, or an attorney for the consumer. Caneel is also not a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector.

47.    In limiting disclosures to third parties, the FDCPA states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. (emphasis added).

15 U.S.C. § 1692c(b).

48.    Section 1692c(b) applies to all communications that, in any way, "concern[]" or are "with reference to" a debt, and prohibits such communications to all third parties, minus only six enumerated exceptions.

49.    Caliber's use of an outside, third-party vendor, was undertaken in connection with collection of the Loan and that conduct does not fall within any permitted exception provided for in 15 U.S.C. § 1692c(b). Indeed, the information which was communicated to Caneel by Caliber did not just concern Nowak's alleged debt, it disclosed her status as a debtor, the fact that Nowak allegedly owed and was delinquent in the payment of the Loan, and the fact that Caliber sought to foreclose on the Home.


50. As a direct result of Caliber's conduct, information regarding a debt allegedly owed by Nowak was improperly conveyed to Caneel, and its many employees.

51. Upon learning of the improper disclosures, Nowak was embarrassed, humiliated and suffered great anxiety which manifested in the form of headache, sleeplessness, and stress related physical exhaustion.

52. On information and belief, Caneel maintains databases of information on the mortgage loans for many consumers throughout the country and communicated with consumers on behalf of Caliber and other default mortgage servicers.

53. Given widely circulated reports of recurrent database hacking, Nowak reasonably feared that the information about her alleged debt would be widely disclosed to others, possibly affecting her relationships with family, friends and employers and otherwise portraying her in a false light.

54. When a debt collector "conveys information regarding the debt to a third party - informs the third party that the debt exists or provides information about the details of the debt - then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015). "[A] violation of § 1692c(b) gives rise to a concrete injury in fact under Article III [of the U.S. Constitution]." *Hunstein v. Preferred Collection & Management Services*, 994 F.3d 1341 (11th Cir. 2021).

55. Indeed, Nowak was placed at great risk of imminent tangible injury, specifically data exploitation and compromise. Data such as that disclosed by Caliber to Caneel resides in computer databases which are now frequently hacked by malicious parties seeking to use such non-public information to their advantage and to the detriment of consumers like Nowak. Consumer data obtained from one source can be aggregated with information from other sources



to allow nefarious actors to exploit a consumer's information and otherwise intrude upon her right to privacy and seclusion.

56. The FDCPA provides that, if a "debt collector" makes an "initial communication with a consumer in connection with the collection of any debt," the debt collector must provide the consumer with certain information, such as the amount of the debt, the name of the creditor, the consumer's right to dispute the debt and seek validation *See* 15 U.S.C. § 1692g(a). This type of notice is commonly called a "validation notice." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 412 (7th Cir. 2005).

57. The FDCPA requires that a debt collector disclose to a consumer that the debt collector is attempting to collect a debt and that any information will be used for that purpose in its initial communication with a debtor, and that in any subsequent communications state that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

58. Caneel did not make the disclosures mandated by 15 U.S.C. § 1692e(11) and 15 U.S.C. § 1692g(a) to Nowak in its December 4 or February 10 communications to Nowak.

59. The FDCPA provides that a debt collector may not falsely represent that it is an attorney. *See* 15 U.S.C. § 1692e(3).

60. Caneel violated the FDCPA when it falsely represented that it could act as an attorney to "assist ...with clearing any liens or judgments on your property."

**COUNT I: Caliber**

**[Fair Debt Collection Practices Act—15 U.S.C. § 1692 *et seq*]**

61. Nowak restates and incorporates by reference paragraphs 1 through 60.

62. Nowak brings this action pursuant to 735 ILCS 5/2-801, individually, and on behalf of all others similarly situated ("Caliber Putative Class").



FILED DATE: 7/29/2021 4:35 PM 2021CH03714

63. Caliber violated 15 U.S.C. § 1692c(b) when it disclosed information about alleged debt owed by Nowak and the Caliber Putative Class to Caneel and its employees.

64. Caliber's communication to others of the details of the debt allegedly owed by Nowak and members of the Caliber Putative Class constitutes an invasion of privacy, a harm which Congress found to be an animating purpose for enactment of the FDCPA.

65. Caliber violated 15 U.S.C. § 1692f by using unfair means in connection with the collection of a debt, *to wit*, knowingly disclosing sensitive non-public information about an alleged debt owed Nowak and the Caliber Putative Class to third parties when not authorized to disclose that information to any third-party.

66. Caliber violated 15 U.S.C. §1692e by using false representation or deceptive means to collect or attempt to collect. Caliber used an agent, Caneel, to represent that Caneel could act as Nowak's attorney to negotiate the resolution of judgments and junior liens to allow Caliber to collect the Loan without proceeding with a foreclosure case.

67. Caliber engaged in the conduct described *infra* with purpose, namely to streamline and automate its collection activities and to gain a competitive advantage over other debt collectors who complied with the FDCPA, and not as a result of bona fide error.

68. Pursuant to 15 U.S.C. § 1692k, Nowak and the Caliber Putative Class are entitled to actual damages, statutory damages, attorneys' fees and costs.

**CLASS ALLEGATIONS**

69. The Caliber Putative Class is defined as follows: (a) all individuals (b) who were alleged to be obligated for a consumer debt (c) who had information regarding the debt (either that the debt exists or the details of that debt), conveyed by Caliber to a third party without the consumer's express consent within one year of the filing of this action.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

70. The following individuals are excluded from the Putative Class: (1) any Judge presiding over this action and members of their families; (2) Caliber, Caliber's subsidiaries, parents, successors, predecessors, and any entity in which Caliber or their parents have a controlling interest and their current or former employees, officers and directors; (3) Nowak's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Caliber Putative Class; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Caliber have been fully and finally adjudicated and/or released.

71. **Numerosity.** Upon information and belief, Caliber conveyed consumer debt information like that contained in the Notice and Demand for Possession to a third party no less than 40 times without the consent of the consumer.

72. The exact number of members of the Caliber Putative Class are unknown and not available to Nowak at this time, but it is clear that individual joinder is impracticable.

73. Members of the Caliber Putative Class can be objectively identified from records of Caliber to be gained in discovery.

74. **Commonality and Predominance.** There are many questions of law and fact common to the claims of Nowak and the Caliber Putative Class, and those questions predominate over any questions that may affect individual members of the Caliber Putative Class. Those common questions include: whether the conveying information regarding the alleged consumer debt allegedly owed by Nowak and class members violated the FDCPA.

75. **Typicality**. Nowak's claims are representative of the claims of other members of the Caliber Putative Class.



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM   2021CH03714

76. Nowak's claims are typical of members of the Caliber Putative Class because Nowak and members of the Caliber Putative Class are entitled to statutory damages as result of Caliber's conduct.

77. **Superiority and Manageability**. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

78. The actual damages suffered by the individual members of the Caliber Putative Class will likely be relatively small, if any, and would not be worth pursuing on an individual basis especially given the burden and expense required for individual prosecution.

79. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

80. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

81. **Adequate Representation**. Nowak will adequately and fairly represent and protect the interests of the Caliber Putative Class.

82. Nowak has no interests antagonistic to those of the Caliber Putative Class, and Caliber has no defenses unique to Nowak.

83. Nowak has retained competent and experienced counsel with substantial experience in consumer law.

84. Pursuant to 15 U.S.C. § 1692k(a)(1), Nowak and members of the class are entitled to recover actual damages from Caliber.

85. Pursuant to 15 U.S.C. § 1692k(a)(2)(A), Nowak and members of the class are entitled to recover from Caliber statutory damages of up to $1,000.



FILED DATE: 7/29/2021 4:35 PM 2021CH03714

86. Pursuant to 15 U.S.C. §1692k(a)(3), Nowak and members of the class are entitled to recover from Caliber costs and reasonable attorneys' fees incurred in this action.

**WHEREFORE**, Nowak prays for the entry of judgment in favor of herself and the Caliber Putative Class and against Caliber for:

a. A finding that the conduct of Caliber as alleged herein is unlawful and violates the FDCPA and certifying a class as describes *infra*;

b. Awarding Nowak and the class statutory damages of $1,000 each pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Awarding Nowak and the class actual damages, in an amount to be proven up at a later date, pursuant to 15 U.S.C. § 1692k(a)(1);

d. Awarding Nowak and the class costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

e. Awarding any other relief as this Court deems just and appropriate.

**COUNT II: Caliber and Caneel**

**[Fair Debt Collection Practices Act—15 U.S.C. § 1692 *et seq*]**

87. Nowak restates and incorporates by reference paragraphs 1 through 60.

88. Nowak brings this action pursuant to 735 ILCS 5/2-801, individually, and on behalf of all others similarly situated ("Caneel Putative Class").

89. Caneel violated the FDCPA when it communicated with Nowak and members of the putative class to collect a consumer debt and failed to provide notice as required by §1692g of the FDCPA.



FILED DATE: 7/29/2021 4:35 PM 2021CH03714

90. Caneel violated the FDCPA when it falsely represented to Nowak that it could act as attorney and negotiate on behalf of Nowak to clear liens or judgment on her Home in violation of 15 U.S.C. §1692e(3) and 15 U.S.C. §1692e(10).

91. Caneel violated the FDCPA when it failed to disclose that it was a debt collector in its communication with Nowak and otherwise failed to make proper disclosures to Nowak in its initial communication. 15 U.S.C. §1692e(11) and 15 U.S.C. §1692g.

92. Caneel engaged in the conduct described *infra* with purpose, namely to streamline and automate its collection activities and to gain a competitive advantage over other debt collectors who complied with the FDCPA, and not as a result of bona fide error.

93. Caliber is liable vicariously for the actions of its agent, Caneel.

94. Pursuant to 15 U.S.C. § 1692k, Nowak and the Caneel Putative Class are entitled to actual damages, statutory damages, attorneys' fees and costs.

**CLASS ALLEGATIONS**

95. A subclass of the Caneel Putative Class ("Caneel Subclass One") is defined as follows: (a) all individuals (b) who were alleged to be obligated for a consumer debt (c) with whom Caneel communicated without disclosing that it was a debt collector and without making disclosures required by 15 U.S.C. §1692g within one year of the filing of this action.

96. A subclass of the Caneel Putative Class ("Caneel Subclass Two") is defined as follows: (a) all individuals (b) who were alleged to be obligated for a consumer debt (c) with whom Caneel communicated and represented that it could take actions on behalf of the consumer that constituted the unauthorized practice of law. within one year of the filing of this action.

97. The following individuals are excluded from the Caneel Putative Class: (1) any Judge presiding over this action and members of their families; (2) Caneel or Caliber or the s

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM  2021CH03714

subsidiaries, parents, successors, predecessors, and any entity in which Caneel or Caliber or their parents have a controlling interest and their current or former employees, officers and directors; (3) Nowak's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Caneel Putative Class; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Caneel or Caliber have been fully and finally adjudicated and/or release.

98.    **Numerosity**. Upon information and belief, Caneel conveyed consumer debt information about consumer mortgage debts to a third party no less than 40 times without the consent of the consumer.

99.    The exact number of members of the Caneel Putative Class are unknown and not available to Nowak at this time, but it is clear that individual joinder is impracticable.

100.    Members of the Caneel Putative Class can be objectively identified from records of Caliber and Caneel to be gained in discovery.

101.    **Commonality and Predominance**. There are many questions of law and fact common to the claims of Nowak and the Caneel Putative Class, and those questions predominate over any questions that may affect individual members of the Caneel Putative Class. Those common questions include: whether the conveying information regarding the alleged consumer debt allegedly owed by Nowak and class members violated the FDCPA.

102.    **Typicality**. Nowak's claims are representative of the claims of other members of the Caneel Putative Class.

103.    Nowak's claims are typical of members of the Caneel Putative Class because Nowak and members of the Caneel Putative Class are entitled to statutory damages as result of the conduct alleged.



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM    2021CH03714

104.    **Superiority and Manageability**. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

105.    The actual damages suffered by the individual members of the Caneel Putative Class will likely be relatively small, if any, and would not be worth pursuing on an individual basis especially given the burden and expense required for individual prosecution.

106.    By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

107.    Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

108.    **Adequate Representation**. Nowak will adequately and fairly represent and protect the interests of the Caneel Putative Class.

109.    Nowak has no interests antagonistic to those of the Caneel Putative Class, and neither Caliber nor Caneel has defenses unique to Nowak.

110.    Nowak has retained competent and experienced counsel with substantial experience in consumer law.

111.    Pursuant to 15 U.S.C. § 1692k(a)(1), Nowak and members of the class are entitled to recover actual damages from Caliber and Caneel.

112.    Pursuant to 15 U.S.C. § 1692k(a)(2)(A), Nowak and members of the class are entitled to recover from Caliber and Caneel statutory damages of up to $1,000.

113.    Pursuant to 15 U.S.C. §1692k(a)(3), Nowak and members of the class are entitled to recover from Caliber and Caneel costs and reasonable attorneys' fees incurred in this action.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**WHEREFORE**, Nowak prays for the entry of judgment in favor of herself and the Caneel Putative Class and against Caliber and Caneel for:

a. A finding that the conduct of Caliber and Caneel as alleged herein is unlawful and violates the FDCPA and certifying a class as describes *infra*;

b. Awarding Nowak and the class statutory damages of $1,000 each pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Awarding Nowak and the class actual damages, in an amount to be proven up at a later date, pursuant to 15 U.S.C. § 1692k(a)(1);

d. Awarding Nowak and the class costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

e. Awarding any other relief as this Court deems just and appropriate

**DOCUMENT PRESERVATION DEMAND**

Nowak hereby demands that all Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Nowak, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Nowak, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of Nowak's claims. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Nowak demands that such Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

DATED: July 29, 2021

*Respectfully submitted,*

**JADWIGA NOWAK**

*/s/ Arthur Czaja*
Arthur Czaja
LAW OFFICE OF ARTHUR CZAJA
7521 N. Milwaukee Ave.
Niles, Illinois 60714
(847) 647-2106
arthur@czajalawoffices.com
Attorney No. 47671

Rusty A. Payton
PAYTON LEGAL GROUP, LLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal
Attorney No. 39459

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
(847) 985-1100
jdavidson@fightbills.com
Attorney No: 65455

*Counsel for Nowak and the Putative Classes*



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

JADWIGA NOWAK, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

CALIBER HOME LOANS, INC. and CANEEL GROUP, LLC,

Defendants.

Case No.

**AFFIDAVIT PURSUANT TO ILLINOIS SUPREME COURT RULE 222(b)**

Pursuant to Illinois Supreme Court Rule 222(b), counsel for the above-named Plaintiff certifies that Plaintiff is seeking money damages in excess of Fifty Thousand and 00/100 Dollars ($50,000.00).

DATED: July 29, 2021

Respectfully submitted,

By: *__/s/ Arthur C. Czaja__*

Arthur Czaja
Law Office of Arthur Czaja
7521 N. Milwaukee Ave.
Niles, Illinois 60714
(847) 647-2106
arthur@czajalawoffices.com
Attorney No. 47671

Rusty A. Payton
Payton Legal Group, LLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal
Attorney No. 39459

Joseph S. Davidson
Law Offices of Joseph P. Doyle LLC

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
(847) 985-1100
jdavidson@fightbills.com
Attorney No: 65455



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM   2021CH03714

# EXHIBIT 1

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

* 5 0 0 9 5 6 7 1 *

Prepared by: KARA FREDERICK

# NOTE

FEBRUARY 07, 2003 [Date] | CHICAGO [City] | ILLINOIS [State]

2617 NORTH [illegible] AVENUE, CHICAGO, IL 60639 [Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $13[illegible],000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on APRIL 01, 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 01, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 660694, Dallas, TX 75266-0694 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $811.03.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP MORTGAGE FORMS - (800)521-7291

-5N (0207) CHL (08/02)(d) Page 1 of 2 Initials: Form 3200 1/01

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
DOING BUSINESS UNDER THE FICTITIOUS
BUSINESS NAME OF AMERICA'S WHOLESALE
LENDER, A NEW YORK CORPORATION
BY
David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| (Seal) - Borrower | (Seal) - Borrower |
| (Seal) - Borrower | (Seal) - Borrower |

*[Sign Original Only]*

Mortgage Page 1 of 17

0030355513
5879/0109 27 001 Page 1 of 17
2003-03-18 08:47:09
Cook County Recorder 56.00

REDACTED

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon
Simi Valley, CA 93063-6712

Prepared By:
K. FREDERICK

AMERICA'S WHOLESALE LENDER

1011 WARRENVILLE RD. #115
LISLE,
IL 60532-

[...e This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated FEBRUARY 07, 2003, together with all Riders to this document.

**ILLINOIS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Page 1 of 15
Initials:
VMP -6A(IL) (0010).01 CHL (11/01) VMP MORTGAGE FORMS - (800)521-7291 Form 3014 1/01
CONV/VA

BOX 333-CTP

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**(B) "Borrower"** is
JADWIGA NOWAK, ZENON NOWAK, HER HUSBAND, AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 660694, Dallas, TX 75266-0694
**(E) "Note"** means the promissory note signed by Borrower and dated FEBRUARY 07, 2003 . The Note states that Borrower owes Lender
ONE HUNDRED THIRTY THOUSAND and 00/100
Dollars (U.S. $ 130,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 01, 2033 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | 0 |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)

Initials: [signature]

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

COUNTY of COOK :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: [redacted] which currently has the address of

2617 NORTH MONITOR AVENUE, CHICAGO ,

[Street/City]

Illinois 60639 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials:

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials:

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials:

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials:

30365873

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage

30365873

Initials: [signature]

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

30365873

Initials

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

20365873

Initials: [signature]

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

Initials: 30365873

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Initials: 30365873

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall**

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

________________ ________________ (Seal)
JADWIGA NOWAK -Borrower

________________ ________________ (Seal)
-Borrower

________________ (Seal)
-Borrower

________________ (Seal)
-Borrower

30365873

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

**STATE OF ILLINOIS,** Cook **County ss:**

I, Undersigned, a Notary Public in and for said county and state do hereby certify that

Jadwiga Nowak & Jerzy Nowak

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 7th day of Feb 2003.

My Commission Expires:

"OFFICIAL SEAL"
NANCY J. BURNS
Notary Public, State of Illinois
My Commission Expires 11/19/05

Notary Public

30365873

Mortgage Page 16 of 17

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

Prepared by: K. FREDERICK

**AMERICA'S WHOLESALE LENDER**
BRANCH #995
1011 WARRENVILLE RD. #115
LISLE, IL 60532-
(630)969-7600
Br Fax No.: (630)852-5700

DATE: 02/07/2003
CASE #:
DOC ID #: [redacted]
BORROWER: JADWIGA NOWAK
PROPERTY ADDRESS: 2617 NORTH MONITOR AVENUE
CHICAGO, IL 60639

**LEGAL DESCRIPTION EXHIBIT A**

FHA/VA/CONV
Legal Description Exhibit A
1C4041XX (11/02)

30365873

* 5 0 0 9 5 6 7 1 *

# CHICAGO TITLE INSURANCE COMPANY

**ORDER NUMBER:** 1409 ST5043974 NWA
**STREET ADDRESS:** 2617 N MONITOR AVE
**CITY:** CHICAGO **COUNTY:** COOK
**TAX NUMBER:** [REDACTED]

**LEGAL DESCRIPTION:**

LOT 14 IN BLOCK 8 IN TITLEY'S SUBDIVISION OF LOT 1 IN THE CIRCUIT COURT PARTITION OF THE WEST 1/2 OF THE SOUTHEAST 1/4 (EXCEPT THE SOUTH 33 1/3 ACRES THEREOF) AND OF THE NORTH 1/2 OF THE SOUTHWEST 1/4 (EXCEPT THE SOUTH 33 1/3 ACRES THEREOF) OF SECTION 29, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

30365873



FILED DATE: 7/29/2021 4:35 PM 2021CH03714

# EXHIBIT 2



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

December 4, 2020

JADWIGA NOWAK
2617 N MONITOR AVE
CHICAGO, IL 0

Re: Loan Number ██████0909)
2617 N MONITOR AVE
CHICAGO, IL 60639

Dear JADWIGA NOWAK,

Caliber Home Loans (Caliber), your mortgage servicer, would like to inform you your loan might be eligible for one of the following loss mitigation programs – Pre-Approved Loan Modification, Underwritten Loan Modification, Deed in Lieu of Foreclosure (DIL), or Cash for Keys (CFK). Caneel Group, LLC is working on behalf of Caliber to assist you with one of the above options.

If you wish to keep your home, a pre-approved loan modification might be available. Call us to see if you loan qualifies! This option saves you time and effort because a completed hardship application is not required for the modification.

If you are interested in moving on from your property, the DIL or CFK program may be a good alternative to foreclosure. The potential benefits are

- A cash incentive to assist with your relocation and resolution of any liens or judgements on your property
- Relief by resolving your debt for good

To take advantage of one of these options or obtain additional information, please call (800) 632-6977 and reference your loan number (9804920909).

If you want to confirm with Caliber that Caneel Group, LLC is authorized to provide these offers to you, please feel free to contact Caliber Home Loans' Customer Service Department at 1-800-401-6587. Caliber's business hours are 8 a.m. to 9 p.m., Central Time, Monday through Thursday; 8 a.m. to 7 p.m., Central Time, Friday and 7 a.m. to 4 p.m., Central Time on Saturday.

Note: There is no guarantee that you will qualify for a foreclosure alternative. Foreclosure activity will not cease until a foreclosure alternative agreement has been approved. Caneel is not a debt collector, does not engage in collection practices, and is not attempting to collect payments. Caliber has retained Caneel solely for the purposes of assisting you with the loss mitigation process.

Sincerely,

Todd Geweke
Loss Mitigator

**Caneel Group, LLC**
59 N. Lakeview Dr. Gibbsboro, NJ, 08026

tel. 800.632.6977
fax. 856.504.6991
email info@caneelgroup.com
web www.caneelgroup.com





* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

# EXHIBIT 3



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/29/2021 4:35 PM 2021CH03714

February 10, 2021

Jadwiga Nowak
2617 N Monitor Ave
Chicago IL 60639

Re: Loan Number [redacted]0909
2617 N Monitor Ave
Chicago IL 60639

Dear Jadwiga Nowak,

This letter is being sent to you as a follow up after our previous conversation regarding your property at **2617 N Monitor Ave Chicago IL 60659**. Caneel Group, LLC is working on behalf of your mortgage servicer, Caliber Home Loans (Caliber), to assist you with working towards a Deed In Lieu of Foreclosure (DIL). If you want to confirm with Caliber that Caneel Group, LLC (Caneel) is authorized to work with you, contact Caliber using the information located on the last bullet point.

The information below will highlight the steps involved in the DIL process and explain the benefits of accepting a DIL.

- ✓ In exchange for your cooperation we are authorized to offer you a Deed in Lieu (DIL) incentive of $5,000.00 **(Five Thousand Dollars and Zero Cents)** to assist you with clearing any liens or judgements on your property. Any funds left over after all liens have been addressed can be used to assist you with relocation.
- ✓ **Please note**, this incentive offer will be rescinded immediately if a foreclosure sale date on the above referenced property is scheduled.
- ✓ A title company will begin research to locate any potential title issues that may need to be resolved prior to the completion of the DIL. Caneel can assist you with working towards a settlement of any liens on your property. A clear title (no liens or judgments against the property) is required before the DIL process can complete. Caliber will cover the cost of recording the DIL paperwork upon completion.
- ✓ You will need to provide a projected move out date and leave the property in a broom swept, bring to market condition.
- ✓ Upon successful completion of the DIL process, Caliber will provide you with documentation stating you have been released from your mortgage obligation. This prevents you from receiving a deficiency judgment for not paying the loan in full. Any funds you may be eligible for will be provided to you once the DIL paperwork has been recorded and confirmation obtained that the property is vacant and in good condition.
- ✓ There may be tax consequences because of a short or negotiated payoff. You are encouraged to contact a tax professional to identify any tax liabilities you may have.
- ✓ The Deed in Lieu incentive is a limited time offer contingent upon verbal acceptance to move forward with the process no later than **February 19, 2021**.
- ✓ If you have any questions for Caliber, please contact Caliber Home Loans' Customer Service Department at 1-800-401-6587. Caliber's business hours are 8 a.m. to 9 p.m., Central Time, Monday through Thursday; 8 a.m. to 7 p.m., Central Time, Friday and 7 a.m. to 4 p.m., Central Time on Saturday.

Caneel is not a debt collector, does not engage in collection practices, and is not attempting to collect payments. Caliber has retained Caneel solely for the purposes of assisting you with the DIL process. The procedure for the DIL process are established by Caliber and must be followed to ensure eligibility for the DIL incentive.

Sincerely,

Tina Picucci
Loss Mitigator II

**Caneel Group, LLC**
59 N. Lakeview Dr. Gibbsboro, NJ, 08026

tel. 800.632.6977
fax. 856.504.6991
email info@caneelgroup.com
web www.caneelgroup.com





* 5 0 0 9 5 6 7 1 *

FILED
7/30/2021 11:27 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03714

14251102

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

| | |
|---|---|
| JADWIGA NOWAK, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC. and CANEEL GROUP, LLC,<br><br>Defendants. | Case No. 2021-CH-03714<br><br>Calendar 11 |

**NOTICE OF FILING**

To: Caliber Home Loans, Inc., c/o C T Corporation System, Registered Agent, 208 S. LaSalle St., Ste. 814, Chicago, IL 60604

Caneel Group, LLC, c/o Illinois Corporation Service C, Registered Agent, 801 Adlai Stevenson Dr., Springfield, IL 62703

**PLEASE TAKE NOTICE** that on **July 30, 2021**, the Plaintiff, Jadwiga Nowak, by and through her attorneys, Joseph Davidson, Arthur C. Czaja and Payton Legal Group, electronically filed and served the Clerk of the Circuit Court of Cook County, Illinois the ***PLAINTIFF'S MOTION TO CLASS CERIFICATION***, a copy of which is attached hereto and hereby served upon you.

*/s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com
Attorney No: 65455

Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714
+1 847-647-2106
arthur@czajalawoffices.com
Attorney No: 47671



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

Rusty A. Payton
PAYTON LEGAL GROUP LLC
4422 North Ravenswood Avenue
Chicago, Illinois 60640
+1 773-682-5210
info@payton.legal
Attorney No. 39459

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on **July 30, 2021** he caused a true and correct copy of this Notice and the enclosed ***PLAINTIFF'S MOTION TO CLASS CERIFICATION*** to be served upon the party(ies) listed above, by attaching a copy of this Notice and enclosed ***PLAINTIFF'S MOTION TO CLASS CERIFICATION*** by postage prepaid first-class mail to the parties identified above at the mailing addresses identified hereinabove from 105 South Roselle Road, Suite 203, Schaumburg, Illinois 60193.

*/s/ Joseph S. Davidson*
Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com
Attorney No: 65455



* 5 0 0 9 5 6 7 1 *
FILED
7/30/2021 11:27 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03714

14251102

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

JADWIGA NOWAK, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

CALIBER HOME LOANS, INC. and CANEEL GROUP, LLC,

Defendants.

Case No. 2021-CH-03714

Calendar 11

**MOTION FOR CLASS CERTIFICATION**

**NOW COMES**, Plaintiff, JADWIGA NOWAK, individually, and on behalf of all others similarly situated, through undersigned counsel, pursuant to 735 ILCS 5/2-801 *et seq*., moving the Court order Count I of this action, alleging violation of Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), to proceed on class basis against Defendants, CALIBER HOME LOANS, INC. and CANEEL GROUP, LLC (collectively, the "Defendants"), as follows:

> **§ 1692c(b) Class**: *All natural persons residing in the State of Illinois (a) whose personal information was communicated by Caliber Home Loans to Caneel Group; (b) within the one (1) year preceding the date of this complaint through the date of class certification; and (c) in connection with the collection of a consumer debt.*

> **§ 1692e(10) Class**: *All natural persons residing in the State of Illinois (a) who received letter(s) from Caneel Group; (b) falsely representing that they were able to take certain actions on behalf of consumers; (c) within the one (1) year preceding the date of this complaint through the date of class certification; and (d) in connection with the collection of a consumer debt.*

> **§ 1692e(11) Class**: *All natural persons residing in the State of Illinois (a) who received letter(s) from Caneel Group; (b) that (i) failed to disclose that Caneel Group was attempting to collect a debt and that any information obtained will be used for that purpose; or (ii) failed to disclose that Caneel*

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

*Group is a debt collector; (c) within the one (1) year preceding the date of this complaint through the date of class certification; and (d) in connection with the collection of a consumer debt.*

**§ 1692g(a) Class**: *All natural persons residing in the State of Illinois (a) who received an initial written communication from Caneel Group; (b) that failed to provide disclosures set forth in 15 U.S.C. § 1692g(a); (c) within the one (1) year preceding the date of this complaint through the date of class certification; and (d) in connection with the collection of a consumer debt.*

The following individuals are excluded from the Putative Class: (1) any Judge presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

In support thereof, Plaintiff states as follows:

## FACTUAL ALLEGATIONS

1. JADWIGA NOWAK ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 2617 North Monitor Avenue, Chicago, Illinois 60639.

2. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

3. CALIBER HOME LOANS, INC., ("Caliber Home Loans") is a corporation organized and existing under the laws of the state of Delaware.

4. Caliber Home Loans uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

owed or due another. Accordingly, Caliber Home Loans is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

5. CANEEL GROUP, LLC ("Caneel Group") is a limited liability company organized and existing under the laws of the state of Delaware.

6. Caneel Group uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

7. Caneel Group is registered as a collection agency with the Illinois Department of Financial and Professional Regulation.

8. Accordingly, Caneel Group is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. On February 7, 2003, Plaintiff executed a mortgage in favor of America's Wholesale Lender (the "Mortgage").

10. The Mortgage secured the purchase of Plaintiff's personal residence located at 2617 North Monitor Avenue, Chicago, Illinois 60639 (the "Property").

11. The Mortgage secured the repayment of the indebtedness evidenced by a promissory note (the "Note") in the amount of $130,000.00 (the "Loan").

12. Plaintiff defaulted on the Mortgage by failing to make monthly payments.

13. The servicing of the Mortgage, was subsequently transferred to Caliber Home Loans.

14. Caliber Home Loans engaged Caneel Group to "assist" Plaintiff with working towards a Deed In Lieu of Foreclosure.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

15. Caliber Home Loans communicated to Caneel Group certain information about Plaintiff, including: (1) Plaintiff's name and address; (2) that Plaintiff owed debt; (3) the entity to whom Plaintiff owed a debt; (4) the exact balance of Plaintiff's Loan; (5) that Plaintiff's Loan is in default; and (6) that Plaintiff's Loan is being collected by a debt collector.

16. Caneel Group mailed Plaintiff a letter, dated February 10, 2021 (the "Letter"), which stated:

> Dear Jadwiga Nowak,
>
> This letter is being sent to you after our previous conversation regarding your property at 2617 N Monitor Ave Chicago IL 60659. Caneel Group, LLC is working on behalf of your mortgage servicer, Caliber Home Loans (Caliber), to assist you with working towards a Deed in Lieu of Foreclosure (DIL). If you want to confirm with Caliber that Caneel Group, LLC (Caneel) is authorized to work with you, contact Caliber using the information located on the last bullet point.
>
> The information below will highlight the steps involved in the DIL process and explain the benefits of accepting a DIL.
>
> - ✓ In exchange for your cooperation we are authorized to offer you a Deed in Diu (DIL) incentive of $5,000.00 (**Five Thousand Dollars and Zero Cents**) to assist you with clearing any liens or judgments on your property. Any funds left over after all liens have been addressed can be used to assist you with relocation.
> - ✓ **Please note**, this incentive offer will be rescinded immediately if a foreclosure sale date on the above referenced property is scheduled.
> - ✓ A title company will begin research to locate any potential title issues that may need to be resolved prior to the completion of the DIL. Caneel can assist you with working towards a settlement of any liens on your property. A clear title (no liens or judgments against the property) is required before the DIL process can complete. Caliber will cover the cost of recording the DIL paperwork upon completion.
> - ✓ You will need to provide a projected move out date and leave the property in a broom swept, bring to market condition.
> - ✓ Upon successful completion of the DIL process, Caliber will provide you with documentation stating you have been released from your mortgage obligation. This prevents you from receiving a deficiency judgment for not paying the loan in full. Any funds you may be eligible for will be provided to you once the DIL paperwork has been recorded and confirmation obtained that the property is vacant and in good condition.
> - ✓ There may be tax consequences because of a short or negotiated payoff. You are encouraged to contact a tax professional to identify any tax liabilities you may have.
> - ✓ The Deed in Lieu incentive is a limited time offer contingent upon verbal acceptance to move forward with the process no later than **February 19, 2021**.

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

- ✓ If you have any questions for Caliber, please contact Caliber Home Loans' Customer Service Department at 1-800-401-6587. Caliber's business hours are 8 a.m. to 9 p.m., Central Time, Monday through Thursday; 8 a.m. to 7 p.m., Central Time, Friday and 7 a.m. to 4 p.m., Central Time on Saturday.

Caneel is not a debt collector, does not engage in collection practices, and is not attempting to collect payments. Caliber has retained Caneel solely for the purposes of assisting you with the DIL process. The procedure for the DIL process are established by Caliber and must be followed to ensure eligibility for the DIL incentive.

Sincerely,

Tina Picucci
Loss Mitigator II

Caneel Group, LLC

## NATURE OF CLAIMS

17. Section 1692c provides:

> **(b) Communication with third parties**. Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

18. Caliber Home Loans' transmittal of Plaintiff's information to Caneel Group constitutes a "communication" as defined by 15 U.S.C. § 1692a(2).

19. Caliber Home Loans' communication with Caneel Gorup was in connection with the collection of Plaintiff's Loan.

21. Specifically, Caliber Home Loans' communication with Caneel Group included specific details regarding Plaintiff's Loan: (1) Plaintiff's status as a debtor; (2) the precise amount of Plaintiff's Loan; (3) the entity to which Plaintiff's Loan was owed, *inter alia*, violating 15 U.S.C. §1692c(b).

20. Section 1692e provides:

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

21. The Letter stated: "Caneel can assist you with working towards a settlement of any liens on your property."

22. In Illinois, assisting individuals to "clear liens" or "negotiating settlement" requires the skill of an attorney and constitutes the practice of law.

23. Caneel Group and its employees are not attorneys; therefore, are not licensed to practice in Illinois.

24. The Letter falsely represented Caneel Group is permitted to "clear liens" or "negotiate settlement" when they weren't, violating 15 U.S.C. § 1692e(10).

25. Under section 1692e(11), a debt collector must disclose certain information in communicating with consumers.

26. An initial communication must state that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11).

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

27. In addition, all subsequent communications must disclose "that the communication is from a debt collector."

28. The Letter stated: "This letter is being sent to you as a f***ollow up after our previous conversation*** regarding your property at 2617 N Monitor Ave Chicago IL 60659."

29. Accordingly, as a subsequent communication, the Letter must disclose "that the communication is from a debt collector."

30. The Letter, however, failed to disclose that the Letter is from a debt collector; violating 15 U.S.C. § 1692e(11).

31. Section 1692g(a) provides:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.



FILED DATE: 7/30/2021 11:27 AM 2021CH03714

32. The disclosures set forth in 15 U.S.C. § 1692g(a), frequently referred to as the "validation notice," are required in the initial communication of all debt collection attempts.

33. The validation notice provisions were included by Congress to ensure that consumers would receive notice of their legal rights.

34. Caneel Group violated 15 U.S.C. § 1692g(a) by failing to provide the mandatory validation notice as required by 15 U.S.C. § 1692g(a).

35. The Letter and similar letters sent to putative class members violated 15 U.S.C. §§ 1692e. and 1692g.

**THE FAIR DEBT COLLECTION PRACTICES ACT**

36. The FDCPA was enacted in part "to eliminate abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692(e). The statute is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) citing *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA broadly prohibits: (1) unfair or unconscionable collection methods, (2) conduct which harasses, oppresses, or abuses any debtor, and (3) any false, deceptive, or misleading statements in connection with the collection of a debt. 15 U.S.C. § 1692d-f.

37. In enacting the FDCPA, Congress recognized the "universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule.... [The] vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." 95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

38. The FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated. *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008); *see also Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D. Minn. 2001) ("The FDCPA is a remedial strict liability statute which was intended to be applied in a liberal manner;" *Picht v. Hawks*, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999), *aff'd*, 236 F.3d 446 (8th Cir. 2001). "Proof of deception or actual damages is not necessary to make a recovery under the FDCPA." *Id.*); *Owens v. Hellmuth & Johnson PLLC*, 550 F.Supp.2d 1060, 1063 (D. Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) ("[the FDCPA] is a remedial statute that we 'construe . . . broadly, so as to effect its purpose.'").

39. "Congress intended the Act to be enforced primarily by consumers...." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). Further, the legislative history shows that Congress clearly intended that private enforcement actions would be the primary enforcement tool of the Act. *See* 123 Cong. Rec. 28112-13 (1977) (remarks of Rep. Annunzio); 1977 U.S.Code Cong. & Adm. News, *supra* at 1700.

40. The unsophisticated consumer standard should apply to claims under § 1692e because that standard would vindicate the FDCPA's purpose of protecting consumers of below-average sophistication and who are thus especially vulnerable to unscrupulous debt collectors. *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003). The "unsophisticated consumer" standard is an objective standard. The question is not whether Plaintiff was deceived or mislead, but rather whether an unsophisticated consumer would have been misled. *See Wright v. Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591, 600 (N.D. Ga. 1982), on reconsideration, 555 F. Supp. 1005 (N.D. Ga. 1983).

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

41. Plaintiff is seeking statutory damages, a penalty that does not depend on proof that the recipient of the letter was misled. *E.g., Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *Harper v. Better Business Services, Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992); *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982). All that is required is proof that the statute was violated, although even then it is within the court's discretion to decide whether and if so, how much to award, up to the $ 1,000 ceiling. *E.g., Tolentino, supra*, 46 F.3d at 651; *Clomon, supra*, 988 F.2d at 1322.

## REQUIREMENTS FOR CLASS CERTIFICATION

42. Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, provides:

> **Prerequisites for the maintenance of a class action.** An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

43. The 1977 Illinois statute was modeled after Rule 23 of the Federal Rules of Civil Procedure, which governs class certification in the Federal courts. *See* Fed. R. Civ. P. 23.

44. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class. This order may be conditional and may be

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

amended before a decision on the merits. 735 ILCS 5/2-802. Certification of a class is within the sound discretion of the trial court. *Haywood v. Superior Bank F.S.B.*, 244 Ill.App.3d 326, 328 (1st Dist. 1993).

45. In a large and impersonal society, class actions are often the last barricade of consumer protection. Generally, individual plaintiffs cannot, will not and ought not be required to pursue what would often be trivial relief. *Hoover v. May Dep't Stores Co.*, 62 Ill. App. 3d 106, 378 N.E.2d 762 (1978) cites a particularly compelling statement with regard to the philosophy to be considered in determining the basis for class certification:

> "'To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.'"

*Hoover*, 62 Ill. App. 3d at 112, quoting Landers, *Of Legalized Blackmail & Legalized Theft: Consumer Class Actions & the Substance-Procedure Dilemma*, 47 So. Cal. L. Rev. 842, 845 (1974).

46. Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As result, numerous FDCPA class actions have been certified. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Vines v. Sands*, 188 F.R.D. 302 (N.D. IL 1999); *Nielsen v. Dickerson*, 1999 WL 350649, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. 1999); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Shaver v. Trauner*, 1998 WL 35333712, 1998 U.S. Dist. LEXIS 19647 (C.D. Ill. 1998)

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

*report and recommendation adopted*, 1998 WL 35333713, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. 1998); *Carroll v. United Compucred Collections, Inc.*, 2002 WL 31936511, 2002 U.S. Dist. LEXIS 25032 (M.D. Tenn. 2002), *report and recommendation adopted in part*, 2003 WL 1903266, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn. 2003) *aff'd,* 399 F.3d 620 (6th Cir. 2005); *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291 (N.D. Ill. 2007); *Keele v. Wexler*, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill. 1996), *aff'd,* 149 F.3d 589 (7th Cir. 1998); *Miller v. Wexler & Wexler*, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill 1998); *Wilborn v. Dun & Bradstreet*, 180 F.R.D. 347 (N.D. Ill. 1998); *Arango v. GC Servs., LP*, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998); *Avila v. Van Ru Credit Corp.*, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), *aff'd sub nom. Avila v. Rubin,* 84 F.3d 222 (7th Cir. 1996); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D. Ill. 2008); *Cotton v. Asset Acceptance,* 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D. Ill. 2008); *Gammon v. GC Services, L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993).

47. As shown below, each requirement of certification can be met.

**Numerosity**

48. Because the language of section 2 – 801(1) is taken verbatim from Federal Rule of Civil Procedure 23(a)(1), federal case law may be considered as exegetic in deciding whether the class is so numerous that joinder is impracticable under the Illinois statute. Ill. Ann. Stat., ch. 110, par. 2 -- 801, Historical & Practice Notes, at 90 (Smith-Hurd 1983). Federal cases establish no bright line. There is no "magic number" below which there cannot be a class, but above which there can. The number of class members is relevant, not determinative. *DeMarco v. Edens* 390 F.2d 836 (2d Cir. 1968).

49. Caselaw further dictates that "[w]here the number of class members is at best fairly small, courts require demonstration of additional reasons why joinder is impracticable." *Wood*

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 1:27 AM 2021CH03714

*River Area Dev. Corp. v. Germania Federal Sav. & Loan Ass'n,* 198 Ill.App.3d 445, 450 (5th Dist. 1990). These additional factors include: (1) the class members' geographical distribution; (2) the ability to identify and locate the class members; (3) the degree of knowledge and sophistication of the class members and their need for protection; (4) the amount of the claims of the individual class members; and (5) the nature of the cause of action. *Id.* at 451

50. The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class. *Kendler v. Federated Department Stores, Inc.*, 88 F.R.D. 688 (S.D.N.Y. 1981); *Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D. Pa. 1979); *Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663 (N.D. Ga. 1975).) "The court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential to most cases in order to reach a class determination... Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1995), §7.22.

51. The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time. Members of the Putative Class can be objectively identified from records of Defendants to be gained in discovery. However, Plaintiff alleges, more than 40 members of the Putative Class exist; therefore, numerosity is satisfied. *See* Miller, *An Overview of Federal Class Actions: Past, Present, and Future*, Federal Judicial Center, at 22 (1977) ("If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, *** become relevant.").

**Predominance of common questions of law or fact**

52. A common question may be shown when the claims of the individual members of

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

the class are based on the common application of a statute or they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634, 595 N.E.2d 149, 153 (1st Dist. 1992).

53. Here, Plaintiff alleges that the common questions are whether:

A. Caliber Home Loans violated 15 U.S.C. § 1692c(b) when they communicated consumers' information to Caneel Group.

B. Caneel Group violated 15 U.S.C. § 1692e(10) when they falsely represented that they were permitted to take certain actions on behalf of consumers; that they were unable to take.

C. Caneel Group violated 15 U.S.C. § 1692e(10) when they failed to disclose that they are a debt collector.

D. Caneel Group violated 15 U.S.C. § 1692g(a) when they failed to provide disclosures set forth in 15 U.S.C. § 1692g(a) in their initial written communication to consumers.

E. Measure of damages.

54. Where a question of law refers to a standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met. *Franklin v. Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).

55. The only individual issue is the identification of the class members, a matter capable of ministerial determination from Defendants' records. Questions readily answerable from defendants' files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

the consumer and the contractor with the contract between the consumer and Community Bank").

**Adequacy of representation**

56. The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321.

57. Plaintiff understands the obligations of a class representative, and has retained experienced counsel with substantial experience in consumer law.

58. The second relevant consideration is whether the interests of Plaintiff are coincident with the general interests of the class members. Here, Plaintiff and members of the Putative Class seek money damages as the result of Defendants' unlawful collection practices, provided for by 15 U.S.C. § 1692. Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of Plaintiff and those of the class.

**Class action is an appropriate method for the fair and efficient adjudication of this controversy**

59. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability

* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM   2021CH03714

that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

60. In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. Individual cases are not economically feasible. The special efficacy of the consumer class action has been noted by the courts and is applicable to this case.

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied....

*In re Folding Carton Antitrust Lit.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright *et al.*, §1778, at 59; *see e.g.*, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions...may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 at 628, 629 (E.D. Pa 1994).

61. Class certification will provide an efficient and appropriate resolution of the controversy. *Zanni v. Lippold*, 119 F.R.D. 32 (C.D. Ill. 1998).



* 5 0 0 9 5 6 7 1 *

FILED DATE: 7/30/2021 11:27 AM 2021CH03714

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, the Court should certify Counts I and II of this action to proceed on class basis against Defendants.

DATED: July 30, 2021

Respectfully submitted,

**JADWIGA NOWAK**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com
Attorney No: 65455

Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714
+1 847-647-2106
arthur@czajalawoffices.com
Attorney No: 47671

Rusty A. Payton
PAYTON LEGAL GROUP LLC
4422 North Ravenswood Avenue
Chicago, Illinois 60640
+1 773-682-5210
info@payton.legal
Attorney No. 39459